IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

UNITED STATES OF AMERICA    )
    )
v.    )   Cr. No. 2:08cr136-MHT
    )
RONRICUEZ BERNARD PAYNE    )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Pending before the Court are Defendant's Motion to Suppress (Doc. #25) and Defendant's Amended Motion to Suppress (Doc. #28).  On 15 August 2008, this Court held a hearing on the Motions.  On 26 August 2008, Defendant filed a post hearing brief (Doc. #35), and on 3 September 2008, the Government filed a Response (Doc. #39).  Defendant seeks to suppress "all items discovered after [the] illegal seizure and search."  (Doc. #28 at 6).  Upon consideration of the motions and the testimony at the evidentiary hearing, the undersigned RECOMMENDS that the motion (Docs. #25 & 28) be DENIED.

## I.  BACKGROUND

Based on the parties' briefs and testimony at the hearing held on 26 August 2008, and to a preponderance of the evidence,[1] the Court finds as follows:

On 30 May 2008, Defendant Ronricuez Bernard Payne (Payne) was stopped by Trooper John Brummitt (Trooper Brummitt) on Interstate 65 in Chilton County, Alabama.

---

[1]  The Court reaches findings of fact at a suppression hearing based on a preponderance of the evidence. *United States v. Beechum*, 582 F.2d 898, 913 n.16 (5th Cir. 1978) (citing *Lego v. Twomey*, 404 U.S. 477, 489 (1972)).

Trooper Brummitt stopped Payne for having an obstructed license plate and for a glass tint violation.  Trooper Brummitt approached Payne's vehicle and asked Payne for his driver's license, vehicle registration, and proof of insurance.

After receiving the licence and registration information, Trooper Brummitt informed Payne as to why he had been stopped and asked him to step out of the vehicle.   After Payne had exited the vehicle, Trooper Brummitt noticed Payne was rubbing his right front pocket and asked Payne if he was carrying any weapons.  Payne stated he was carrying a "box-blade" and began to reach into his pants pocket to retrieve it.  The trooper ordered Payne to stop, place his hands on the trooper's vehicle, and retrieved the "box-blade" from Payne's pocket.

While retrieving the "box-blade" from Payne's pocket, Trooper Brummitt felt what he believed to be a "marijuana-shaker" (a small container used to carry marijuana).  Trooper Brummitt asked Payne if there was anything else in his pockets.  Payne began to put his hands back in his pockets and Trooper Brummitt instructed Payne to place his hands back on the car and asked for consent to retrieve the items.  Payne consented.  Trooper Brummitt removed what he believed to be the marijuana shaker and observed what he believed to be marijuana inside.

Next, Trooper Brummitt retrieved retrieved a box of razor blades out of Payne's pocket.  The trooper then went around to the passenger side of his vehicle and laid the box of blades, the container, and Payne's paperwork on the hood of his patrol car.  When he

2

turned around, Trooper Brummitt saw Payne spit gum at the trooper's feet.   Trooper Brummitt felt threatened and placed Payne in handcuffs.   Trooper Brummitt continued his pat-down of Payne and retrieved a large amount of cash from Payne's pocket.   Trooper Brummitt then placed Payne in the front passenger seat of his patrol car and walked around the car and entered the driver's side of the vehicle and began issuing the citations.

While preparing the citations, Trooper Brummitt ran a criminal background check on Payne.   Shortly after receiving the results of the criminal history check, and after speaking to other police officers by radio, Trooper Brummitt informed Payne he was under arrest for the marijuana and placed him in the back seat of the patrol car.   Trooper Brummitt then began searching Payne's vehicle and recovered less than five kilograms of cocaine powder and $50,000.00 in cash.   The rest of the vehicle was searched after being transported to Montgomery, where a fully-loaded HNK .45-caliber handgun was found.

## II.   DISCUSSION

Payne sets forth three arguments.   First, Payne contends the duration of the traffic stop was unreasonable.   Second, Payne argues the consent to search his pants pocket was not voluntary given.   Third, Payne argues that the search of his vehicle was unlawful.

### A.   Duration of the Traffic Stop

Payne does not contest that the traffic stop in this case was legitimate.   He does however, argue that the continuation of the stop, which led to the search and seizure was unreasonable.   At the hearing, Payne conceded that after Trooper Brummitt found what he

3

believed to be marijuana the extension of the traffic stop was permissible.  Therefore, the Court will analyze the traffic stop up and until the time the alleged marijuana shaker was found and determine if it exceeded the bounds of a legal seizure.

"The Fourth Amendment protects individuals from unreasonable search and seizure." *United States v. Chanthasouxat*, 342 F.3d 1271, 1275 (11th Cir. 2003).  While "a traffic stop is a seizure within the meaning of the Fourth Amendment . . . [b]ecuase [it is] only a limited form of seizure, it is more analogous to an investigative detention than a custodial arrest." *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001) (internal citations omitted). "[T]he duration of the traffic stop must be limited to the time necessary to effectuate the purpose of the stop . . . [and] may not last any longer than necessary to process the traffic violation unless there is articulable suspicion of other illegal activity."  *Id.*  (internal quotations omitted).  "A traffic stop may be prolonged where an officer is able to articulate a reasonable suspicion of other illegal activity beyond the traffic offense."  *United States v. Perkins*, 348 F.3d 965, 970 (11th Cir. 2003).

In this case, Trooper Brummitt testified he approached Payne's vehicle, Payne lowered his window, and the trooper asked for Payne's licence, proof of insurance, and vehicle registration.  Payne handed the trooper his proof of insurance, and as Trooper Brummitt observed the insurance paper he noticed Payne's hands were shaking, he was breathing heavily, and the smell of marijuana emanated from his vehicle.  Trooper Brummitt also observed two cans of "Blunt Powder," which he knew, in his experience, to be used to

mask the smell of marijuana.  Thus, Trooper Brummitt was able to articulate a reasonable suspicion Payne may be engaged in other criminal activity and could therefore continue his investigation beyond the traffic stop.  *See United States v. Griffin*, 109 F. 3d 706 (11th Cir. 1997).

After Trooper Brummitt received the licence and registration information, he informed Payne as to why he had been stopped and asked him to step out of the vehicle.   After Payne exited the vehicle, Trooper Brummitt noticed Payne was rubbing his right front pocket and asked Payne if he was carrying any weapons.  Payne stated he was carrying a "box-blade" and began to reach into his pants pocket to retrieve it.  The officer ordered Payne to stop and then retrieved the "box-blade" from Payne's pocket.

While "[a] *Terry* stop cannot be used as the basis of a 'full search' that would normally be warranted only by the existence of probable cause, consent, or a valid arrest," *United States v. Hardy*, 855 F.2d 753, 759 (11th Cir. 1988) (*citing United States v. Place*, 462 U.S. 696, 706 (1983);  *Fla. v. Royer*, 460 U.S. 491 (1983)), an officer may ask for consent to search during a *Terry* stop.  *See, e.g., United States v. Acosta*, 363 F.3d 1141 (11th Cir. 2004).  Once Payne announced he was carrying a "box-blade", Trooper Brummitt could search Payne for weapons.  Under *Terry,* a law enforcement officer, during the course of an investigatory stop, may conduct a "reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual." *Terry*, 392 U.S. at 27. The test is "whether a reasonably prudent man in the

circumstance would be warranted in the belief that his safety or that of others was in danger." *Id*. (citations omitted).  After smelling marijuana odors emanating from the vehicle and Payne's admission that he was carrying a "box-blade," Trooper Brummitt was warranted in his belief that his safety may be in danger and in fact testified that he felt threatened.  Payne, in his post-hearing brief in support, agrees that the "pat down for weapons, pursuant to *Terry*, was proper." (Doc. #35 at 8).  Thus, at this point, the duration of the traffic stop had not been unreasonably extended.

While retrieving the box-blade from Payne's pocket, Trooper Brummitt felt what he believed to be a "marijuana-shaker" (a small container used to carry marijuana).  Trooper Brummitt asked Payne if there was anything else in his pockets.  Payne began to put his hands back in his pockets and Trooper Brummitt instructed Payne to place his hands back on the car and asked for consent to retrieve the items.  Payne consented.  Trooper Brummitt removed what he believed to be the marijuana shaker and observed what he believed to be marijuana inside.

Thus, Trooper Brummitt was able to articulate a reasonable suspicion of other illegal activity beyond the traffic offense specifically, what he suspected was the possession of marijuana and could extend the traffic stop.  In light of the smell of marijuana emanating from the vehicle, Payne's nervous demeanor, and the "blunt powder" in the car, Trooper Brummitt's suspicion was reasonable and his continued investigation was permissible.

**B.    Consent to Search**

Payne argues that his consent to search could not have been voluntary because: he was not read his *Miranda* rights; he was not told he had a right to refuse consent; and he must not have believed he was free to leave.  The Government argues consent was voluntarily given.

As to whether a *Miranda* warning was necessary prior to the request for consent to search; an officer may seek consent to search during a *Terry* stop, and *Terry* stops are not "subject to the dictates of *Miranda*."  *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984).[2] Thus, a *Miranda* warning, given pursuant to the right against self incrimination under the Fifth Amendment, was not required prior to seeking consent to search, an issue of the Fourth Amendment.

---

[2]     Whether a *Miranda* warning is necessary is a Fifth Amendment question related to the suppression of statements.  Although in his amended motion to suppress Payne states he seeks to suppress any and all statements made, in his post hearing briefing Payne only makes arguments regarding the items seized.  Further, Payne had the opportunity to present evidence in support of his motion to suppress any statements and failed to do so.  Upon conclusion of the hearing, the only statement the Court could conceive Payne may want suppressed is his statement that all he had on himself was a little bit of weed.

This statement was made after the trooper found the alleged marijuana shaker, but prior to Payne's arrest.  The advice of a *Miranda* warning would not apply prior to a full arrest unless "there is a restraint on freedom of movement 'of the degree associated with a formal arrest.'"  *United States v. Muegge,* 225 F.3d 1267, 1270 (11th Cir. 2000) (*quoting Minn. v. Murphy*, 465 U.S. 420, 430 (1984)).   In making this determination, the Court will look to the "totality of the circumstances."  *United States v. McDowell*, 250 F.3d 1354, 1362 (11th Cir. 2001).  "The test is objective: the actual, subjective beliefs of the defendant and the interviewing officer on whether the defendant was free to leave are irrelevant."  *United States v. Street*, 472 F.3d 1298, 1309 (11th Cir. 2006) (*quoting United States v. Moya*, 74 F.3d 1117, 1119 (11th Cir. 1996).  "The only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation."  *Berkemer*, 468 U.S. at 442.  "Under the objective standard, the reasonable person from whose perspective 'custody' is defined is a reasonable innocent person."  *Id.*

The undersigned finds that the objective factors in this case show that, at the time Trooper Brummitt asked Payne if this was all the drugs he had, a reasonable innocent person would not have believed their freedom was restrained to the degree associated with a formal arrest.  At the time of the question, Payne was not in handcuffs had just voluntarily consented to a search, the Trooper had not brandished a weapon, and had not used language that indicated compliance was necessary.  Thus, Payne has not shown that the advice of *Miranda* was necessary at that point the trooper asked Payne the question.

"In considering whether a consent to search was voluntary, [the courts] examine the totality of the circumstances." *Hudson v. Hall*, 231 F.3d 1289, 1296 (11th Cir. 2000). "A consensual search is constitutional if it is voluntary; if it is the product of an 'essentially free and unconstrained choice.'" *United States v. Purcell*, 236 F.3d 1274, 1281 (11th Cir. 2001) (*quoting Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973)). The totality of the facts and circumstances surrounding Payne giving Trooper Brummitt consent to search establish that consent was given freely and unconstrained. The uncontested evidence presented to this Court is that Payne verbally gave the trooper consent to search his pockets.

"In evaluating the totality of the circumstances underlying consent, the court should look at several indicators, including the presence of coercive police procedures, the extent of the defendant's cooperation with the officer, the defendant's awareness of his right to refuse consent, the defendant's education and intelligence, and the defendant's belief that no incriminating evidence will be found." *United States v. Simms*, 385 F.3d 1347, 1355 (11th Cir. 2004). Up to this point, Payne had been cooperating with the trooper, the trooper had not engaged in any coercive police procedures, and there is no evidence Payne's intelligence or education was lacking.

Payne argues, however, he was not aware of his right to refuse consent. There was no evidence that Trooper Brummitt told Payne that he must consent. Further, "[t]he Supreme Court has specifically rejected the argument that consent to a search cannot be valid unless the defendant knew that he had a right to refuse the request." *Purcell*, 236 F.3d at 1281

(*citing Schneckloth,* 412 U.S. at 227) ("While knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the *sine qua non* of an effective consent."). Thus, while the Court takes into consideration that the trooper did not inform Payne he had the right to refuse consent, the troopers failure to inform is not issue dispositive.

Finally, Payne argues he was not free to leave and thus consent could not have been voluntarily given. As discussed above, under *Terry*, the trooper had the right to detain Payne and continue his investigation. Simply because Payne was not free to leave does not render his consent involuntary. This Circuit has held that persons who have been arrested, forced to lie down on the ground, and held at gunpoint, were able to voluntarily consent. *United States v. Hidalgo*, 7 F.3d 1566, 1571 (11th Cir. 1993). Because there are no "artificial restrictions upon such searches," *Schneckloth,* 412 U.S. at 229, "in determining whether [Payne's] consent was voluntary, [the Court] must scrutinize the facts, and strike a balance between [Payne's] right to be free from coercive conduct and the legitimate need of the government to conduct lawful searches." *United States v. Garcia*, 890 F.2d 355, 360 (11th Cir. 1989).

Although Trooper Brummitt did not inform Payne he could refuse to consent, and Payne was not free to leave, Payne was not in handcuffs nor had Trooper Brummitt brandished his weapon or demanded Payne consent. Trooper Brummitt, in reasonably believing Payne may be involved in illegal activity, asked Payne for consent, in a non-

coercive manner and it was freely given.  After evaluating the totality of the circumstances, as presented to the Court, the undersigned is confident Payne's consent was the product of an essentially free and unconstrained choice.

**C.    Search of the Vehicle**

After arresting Payne, Trooper Brummitt began an inventory search of Payne's vehicle and recovered less than five kilograms of cocaine powder and $50,000.00 in cash.  The rest of the vehicle was searched after being transported to Montgomery, where a fully loaded HNK .45-caliber handgun was found.  Payne argues that, because "there is no evidence before this Court that any marijuana exists or that any container that was removed from the Defendant's pocket exists," and "the Trooper testified that no arrest was ever effected against the Defendant for possession of marijuana or anything related thereto, . . . no lawful arrest [] occurred which could lead to the search of the vehicle that is evidenced by anything before this Court."  (Doc. #35 at 6-7).

First, there is evidence before this Court that a container of marijuana was taken from Defendant's pocket.  Specifically, Trooper Brummitt gave undisputed testimony to that effect.  Second, Trooper Brummitt had probable cause to make a legal arrest once he found the container and believed there was marijuana inside, even if later laboratory results determine the substance was not marijuana.  *See Illinois v. Gates*, 462 U.S. 213 (1983); *Bailey*, 956 F.2d at 1120 ("Probable cause requires more than mere suspicion, but does not require convincing proof.").  "Probable cause to arrest exists when the totality of the facts

and circumstances support a reasonable belief that the suspect had committed or was committing a crime." *United States v. Lindsey*, 482 F.3d 1285, 1291 (11th Cir. 2007). The test, then, is not whether there was actual marijuana in the container, but whether Trooper Brummitt was reasonable in his belief that it was marijuana. The trooper testified that he could see through the container enough to visually identify the substance as marijuana and that the substance smelled like marijuana. Therefore, the trooper had probable cause to arrest Payne.

Once Payne was arrested, Trooper Brummitt was authorized to search Payne's car under the automobile exception to the warrant requirement.

> The automobile exception allows the police to conduct a search of a vehicle if (1) the vehicle is readily mobile; and (2) the police have probable cause for the search. *United States v. Watts*, 329 F.3d 1282, 1286 (11th Cir. 2003). The requirement of mobility is satisfied merely if "the automobile is operational." *Id*. In addition, "[t]here is no requirement that the warrantlees search of a vehicle occur contemporaneously with its lawful seizure" or that other "exigent circumstances" exist. *United States v. Johns*, 469 U.S. 478, 105 S.Ct. 881, 885, 83 L.Ed.2d 890 (1985). The key issue here is whether the police had probable cause for the search and seizure of the vehicle. "Probable cause, in turn, exists when under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in the vehicle." *United States v. Tamari*, 454 F.3d 1259, 1264 (11th Cir. 2006) (citation and internal quotation marks omitted).

*Lindsey*, 482 F.3d at 1291. After finding what he believed to be marijuana on Payne's person, smelling marijuana inside the car, and seeing "blunt powder" cans inside the vehicle, the trooper reasonably concluded there was a fair probability that contraband or evidence of a crime would be found in the vehicle. Thus, Trooper Brummitt had probable cause to

search Payne's car under the automobile exception to the warrant requirement.

## III.   CONCLUSION

Therefore, for the reasons stated above, it is the RECOMMENDATION of the Magistrate Judge that Payne's Motion to Suppress (Doc. #25) and Amended Motion to Suppress (Doc. #28) be DENIED.  It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation **on or before 14 October 2008**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

12

DONE this 29th day of September, 2008.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE